789 S.E.2d 163

**IN RE: S.H.**

**No. 15–0708**

Supreme Court of Appeals of West Virginia.

Submitted: January 12, 2016

Filed: June 16, 2016

A. Courtenay Craig, Esq., Craig Law Office, Huntington, West Virginia, Counsel for the Petitioner.

Patrick Morrisey, Esq., Attorney General, S. L. Evans, Esq., Assistant Attorney General, Counsel for Respondent DHHR.

David R. Tyson, Esq., Tyson & Tyson, Huntington, West Virginia, Counsel for Intervenors K.W. and C.W.

Alison R. Gerlach, Esq., Wayne, West Virginia, Guardian ad litem for S.H.

Benjamin, Justice:

This appeal arises from abuse and neglect proceedings involving four-year-old S.H., and her maternal grandmother and guardian, petitioner, M.C.[1] Below, S.H. was adjudicated to have been neglected by M.C. M.C. was granted an improvement period, but the improvement period was abruptly terminated by the court's order, and M.C.'s guardianship of S.H. was subsequently terminated. Upon our review, we find no error in the conclusion that S.H. was a neglected child and we affirm that determination; however, we conclude that the termination of M.C.'s improvement period was erroneous, and we reverse that decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

S.H. was born in November, 2011, to mother N.H. and father B.H. S.H. was born addicted to methadone and marijuana. Shortly after her birth, an abuse and neglect petition was filed on behalf of S.H. in the Circuit Court of Wayne County. At the conclusion of that case, S.H.'s parents relinquished their custodial rights to S.H., and her maternal grandmother, M.C., was declared her legal guardian.

In 2014, the mother, N.H., was arrested for felony third-offense shoplifting. She entered a guilty plea and was placed on home confinement in M.C.'s home, in which she and S.H. resided. As part of her home confinement, N.H. was subject to terms and conditions, including the possibility of random home visits by supervising authorities. On August 21, 2014, a home confinement officer made such a visit, during which he found nearly two pounds of marijuana hidden in the closet in N.H.'s bedroom. M.C. and N.H. initially denied any knowledge of how the marijuana came to be in the closet. S.H. was not present during the search of the home, as she was visiting the home of the intervenors, C.W. and K.W., who were M.C.'s neighbors. Both M.C. and N.H. were charged with possession of marijuana.

For a one-week period following M.C. and N.H.'s arrests, S.H. stayed with C.W. and K.W. while Child Protective Services ("CPS") investigated the situation. S.H. was returned to the home of her grandmother on August 28, 2014. On September 10, 2014, the

---

1. Because this case involves sensitive facts, we protect the identities of those involved by using only the parties' initials. *See State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987); *see also* W. Va. R. App. P. 40.

Department of Health and Human Resources ("Department") filed an abuse and neglect petition naming M.C., N.H., and B.H. as respondents. S.H. was removed from M.C.'s home and placed in the custody of C.W. and K.W.

The court held an adjudicatory hearing on October 31, 2014, at which time S.H. was found to be a neglected child because M.C. allowed marijuana to be in the home she shared with the child.[2] M.C. moved for a post-adjudicatory improvement period pursuant to W. Va. Code § 49-4-2 (2015). Neither the Department nor S.H.'s guardian ad litem objected to an improvement period and the motion was granted. By order entered December 4, 2014, M.C. was placed on an improvement period, with supervised visitation.[3] The family case plan prepared by the Department for M.C.'s improvement period required M.C. to continue to abstain from illegal drugs and to provide a safe, drug-free home for the child. Additionally, the family case plan required M.C. to undergo random drug screens to detect the use of illegal or illicit drugs. M.C. was also required to participate in parent education and such other services as deemed necessary.

Shortly after the adjudicatory hearing, M.C. was indicted by the grand jury on a felony charge of possessing marijuana with the intent to deliver. See W. Va. Code § 60A-4-401 (2011). M.C. entered into a plea agreement with the State whereby she entered a guilty plea to one count of misdemeanor possession of greater than fifteen grams of marijuana on February 20, 2015.[4] She was sentenced to ninety days in jail, but her jail sentence was suspended and M.C. was placed on probation for two years.

M.C.'s improvement period was reviewed on February 20, 2015.[5] At the hearing, the Department reported to the court that M.C. continued to work with her parent educator and was actively participating in those services, with no absences. M.C. had attended all her visitations with the child and the Department stated that it had no concerns with these visitations. S.H. and M.C. interacted well and appeared to have a loving and appropriate relationship. The Department also told the court that all thirty-five of M.C.'s drug screens were negative for the presence of illegal or illicit drugs. In addition, the court was told that M.C.'s home was properly and adequately maintained and furnished. In all respects, M.C. was in full compliance with all the terms and conditions of her improvement period as well as any requests of service providers.

The Department's proposed plan for S.H. involved returning her to the home of M.C. for continuation of an in-home improvement period. The proposal permitted M.C. to have physical custody of S.H. while the Department retained legal custody of S.H. Services would continue to the home. In addition, the Department recommended that S.H. regularly visit with C.W. and K.W., inasmuch as they and the child had a strong bond. S.H.'s guardian ad litem agreed with the recommendation of the Department to return the child to M.C. as part of the continued improvement period.

The court found that M.C. had "been substantially compliant with the terms and conditions of her improvement period." However, the court determined that M.C. had not corrected the circumstances that led to the filing of the petition and that it was not in the child's best interests to be returned to

2. The father, B.H., was found to have neglected S.H. by not exercising his parental responsibilities, by being incarcerated, by not supporting his daughter, by not developing a relationship with the child, and by questioning the paternity of S.H. The mother was found to have neglected S.H. because of her substance abuse and her inability to care for the child because of incarceration. Both parents' parental rights have been terminated.

3. M.C. had previously been receiving unsupervised overnight visitation in her home with the

child. The court altered this visitation, by requiring it to be supervised, in light of M.C.'s recent indictment on a felony drug charges.

4. M.C. claimed that she had used marijuana to relieve lingering pain she experienced after an accident.

5. M.C.'s criminal proceeding was before a different judge than the judge handling the instant abuse and neglect proceeding.

M.C.'s home. Without a motion being filed by any party, the court terminated M.C.'s improvement period. S.H. has since resided in the home of C.W. and K.W., with the Department having legal custody of the child.[6]

On April 7, 2015, M.C. filed a motion pursuant to Rule 60(b) of the *West Virginia Rules of Civil Procedure*, seeking relief from the termination of the improvement period. After a hearing was held, the motion was denied by order entered April 16, 2015.

On June 5, 2015, the circuit court held a dispositional hearing. The court decided that M.C. had failed to provide a safe and stable home for the child and that there was no likelihood that M.C. could correct the circumstances of neglect in the reasonably foreseeable future. The court found that it was contrary to the welfare of S.H. to be returned to M.C.'s home, citing unsafe conditions in the home and M.C.'s failure to protect the child. The court concluded that it was in S.H.'s best interests to terminate the legal guardianship of M.C. over S.H.

## II. STANDARD OF REVIEW

■ This Court has held that

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). Specifically with regard to abuse and neglect cases, this Court has held:

[a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions

of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). With these standards in mind, we now turn to the issues before us.

## III. ANALYSIS

■ The petitioner in this matter first asserts that the adjudication of S.H. as a neglected child was unsupported by the facts. The circuit court based this finding upon the presence of over two pounds of marijuana, of which M.C. admitted ownership and use of, in the home in which S.H. lived. The circuit court found that M.C. had permitted marijuana to be in her home and that the marijuana was accessible to S.H.

A circuit court's finding of neglect will not be set aside unless it is clearly erroneous. As we stated in syllabus point 1 of *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177, "[a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

W. Va. Code § 49–1–201 (2015) defines a neglected child as one

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due

---

**6.** While the order terminating M.C.'s improvement period likewise terminated her visitation, on September 14, 2015, this Court directed the circuit court to enter an order reinstating M.C.'s supervised visitation with the child pending this appeal. The circuit court entered the order reinstating visitation on November 24, 2015.

primarily to a lack of financial means on the part of the parent, guardian or custodian; or

&middot; (B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian.

Upon a review of the record and the transcript of the adjudicatory hearing, we do not find the circuit court's determination of neglect to be clearly erroneous. While S.H. appeared to have had adequate food and clothing, the presence of marijuana in the home posed a present danger for neglect. Although M.C. entered a plea of guilty to a misdemeanor for possession of the marijuana, the State could have sought a felony conviction carrying a potential prison sentence. M.C. could have been detained in jail pending resolution of these criminal charges.

This Court has upheld findings of neglect and the termination of parental rights because of the exposure to illegal drug abuse by adults in the home. In *In re J.W.*, No. 11–0774, 2012 WL 2948562, at *5 (W. Va. March 12, 2012) (memorandum decision), this Court affirmed the finding of abuse and neglect (and ultimate termination of parental rights) based in part upon the presence of capped and uncapped hypodermic needles in the home, the operation or attempted operation of a methamphetamine laboratory, all of which created a risk of imminent danger to the children. In the case of *In re D.H.*, No. 15–0686, 2015 WL 7628730, at *1 (W. Va. November 23, 2015) (memorandum decision), this Court upheld the adjudication of two children as abused and neglected based in part upon the findings that the mother was in possession of several precursors to the manufacture of methamphetamine, various pharmaceuticals, scales, marijuana paraphernalia and evidence of an inactive and active methamphetamine laboratory. Some of these items were found in the master bedroom. In the case of *In re Aaron Thomas M.*, 212 W.Va. 604, 575 S.E.2d 214 (2002), the circuit court's finding that the continued use of marijuana in a child's presence constituted abuse was affirmed, wherein we stated, "We believe that the circuit court was not clearly errone-

ous in finding the children were emotionally abused by [the mother's] repeated drug use in their presence." *Id.* at 609, 575 S.E.2d at 219. In view of our case-law relating to findings of neglect, and there being a more than adequate factual basis to support the circuit court's neglect finding, we affirm that portion of the court's order.

■ We next turn to M.C.'s contention that the circuit court was clearly wrong by terminating her improvement period. If the court erred in terminating the improvement period, the dispositional order terminating M.C.'s guardianship would likewise be in error.

W. Va. Code § 49–4–610 (2015) details the imposition of improvement periods in abuse and neglect cases. It also describes the duties and responsibilities of all parties to the proceedings, including the role of the Department in providing services to the parents and children during the improvement period, as well as monitoring the progress of the participants.

Prior to granting a post-adjudicatory improvement period the party seeking the improvement period must file a written motion with the court. That party bears the burden of demonstrating to the court by clear and convincing evidence that he or she "is likely to fully participate in the improvement period." W. Va. Code § 49–4–610(2)(B). In this case, M.C. complied with these requirements and, before the improvement period was granted, the court made a finding that M.C. was likely to fully participate in the improvement period.

At the first review of M.C.'s improvement period, the circuit court found that M.C. had been in substantial compliance with the terms and conditions of her improvement period. The record supports this finding. M.C. fully participated in the improvement period. She remained drug-free, as shown by the many drug screens undertaken to show the presence of illegal or illicit drugs. She maintained a fit and proper home for S.H. and N.H. no longer resides in the home. She complied with all requests of the Department. Both the Department and S.H.'s guardian ad litem agreed with the proposal

to return S.H. to her grandmother's custody for continuation of an in-home improvement period.

■ Despite M.C.'s complete compliance with the terms of her improvement period, the court, of its own volition, determined that M.C. could not correct the circumstances of neglect that led to the filing of the abuse and neglect petition.[7] The court's June 15, 2015, order terminating M.C.'s guardianship of S.H. said, "[t]here is no reasonable likelihood the grandmother, [M.C.], can correct the circumstances of neglect in the reasonably foreseeable future." Upon our review, we find that this conclusion is wholly unsupported by the court's findings of fact. Therefore, the termination of M.C.'s improvement period and guardianship constitutes an abuse of discretion.[8] We, therefore, reverse that portion of the circuit court's ruling which terminated M.C.'s guardianship, and remand this matter for reinstatement of M.C.'s improvement period.

## IV. CONCLUSION

We find no error in the circuit court's adjudication of S.H. as a neglected child based upon M.C.'s use and possession of marijuana in the home of S.H. However, because M.C. was in full compliance with the terms and conditions of her improvement period, the termination of M.C.'s improvement period and guardianship constituted an abuse of discretion. We reverse the

June 5, 2015, order terminating M.C.'s guardianship of S.H. and the circuit court's order terminating M.C.'s improvement period. We remand this case for entry of an order continuing this improvement period and for implementation of specific visitation by and between S.H. and C.W. and K.W., if the improvement period includes the Department's and the guardian ad litem's proposal to gradually transition S.H. to the home of her grandmother. The mandate of this Court shall issue forthwith.

Affirmed in part, reversed in part, and remanded with directions.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

JUSTICE LOUGHRY concurs, in part, dissents, in part, and reserves the right to file a separate opinion.

Workman, Justice, concurring:

This is a difficult case to resolve because the little girl who is the subject of these proceedings not only has an emotional bond with her grandmother, M.C., but also with the Intervenors, K.W. and C.W. The circuit court granted M.C.'s motion for an improvement period with terms adopted from the family case plan developed by the multidisciplinary team. The goal from the beginning of this proceeding was reunification with grandmother. The undisputed evidence before the circuit court clearly demonstrated

---

7. With respect to a party seeking to terminate an improvement period, W. Va. Code § 49–4–610(7) states

   **Termination of improvement period.**—Upon the motion by any party, the court shall terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period or has satisfied the terms of the improvement period to correct any behavior alleged in the petition or amended petition to make his or her child unsafe.

   Here, the court acted *sua sponte*, not upon the motion of a party.

8. Our holding today should not be interpreted to suggest that a circuit court lacks the discretion to terminate an improvement period when a parent or guardian shows substantial compliance with its terms and conditions. This Court has recognized that "it is possible for an individual to

show compliance with specifics aspects of the case plan while failing to improve the overall attitude and approach to parenting." *In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995) (internal quotation marks, alteration, and ellipsis omitted). Moreover, "[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court regardless of whether the individual has completed all suggestions or goals set forth in family case plans." *Id.* (internal quotation marks omitted); *see also* syl. pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014) ("In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.").

that grandmother had been compliant with the terms and conditions of her improvement period. She ceased her marijuana use, which was verified by multiple negative drug screens; she continued to maintain her job, her home, and complied with all requests from the Department.[1] Despite these facts, the circuit court halted the improvement period and entered an order terminating the grandmother's rights. No factual reasons were given by the court for the interruption of the improvement or the termination of the grandmother's guardianship rights.

Our case law is clear that

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991); *see also* Syl. Pt. 2, in part, *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993) (stating that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements; it is also within the court's discretion to terminate the improvement period . . . if the court is not satisfied that the [respondent] is making the necessary progress.").

In addition, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014).

These cases reflect the high level of trust and discretion the system places in the judgment of trial court judges who have direct contact with the child, the potential custodians, and all other individuals involved. However, while this Court is appropriately disinclined to substitute its judgment for that of the circuit court in child abuse and neglect proceedings, we must conclude that the circuit court abused its discretion when it terminated M.C.'s improvement period and guardianship without establishing any record regarding the factors which persuaded it to make such disposition.

In fact, the record is completely devoid of *any* evidence that supports the conclusion that it was not in the S.H.'s best interests to be reunited with her grandmother. The strong bond that existed between the two remained intact during these proceedings. They have had visitation and remained in contact. The Department asserts that all reports were positive and that S.H. "enjoys being with her grandma." The Department states the best interests of S.H. would be served by returning the child to the grandmother/guardian who has cared for her since her birth, in light of her correction of the conditions that led to the removal of the child.

Because the circuit court failed to articulate any cogent reason to terminate the improvement period or to terminate rights, we remand this case for entry of an order continuing the improvement period. At the conclusion of M.C.'s improvement period, the circuit court must determine if M.C. can maintain the goals set for her and "whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return" of S.H. to her. Syl. Pt. 6, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

The circuit court must also consider, however, what will be in the best interests of S.H. with regard to a continued relationship with the Intervenors K.W. and C.W. Without a doubt, S.H. has formed a bond with them, too, and S.H.'s best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life. As this Court explained in *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989):

---

1. Importantly, N.H., the child's mother, has left M.C.'s residence; N.H.'s parental rights have been terminated and N.H. has no contact with S.H.

The best interests of the child concept with regard to visitation emerges from the reality that "[t]he modern child is considered a person, not a sub-person over whom the parent has an absolute and irrevocable possessory right. The child has rights. . . ." Another concern is "the need for stability in the child's life. . . . [T]ermination of visitation with individuals to whom the child was close would contribute to instability rather than provide stability.

*Id.* at 452, 388 S.E.2d at 326 (citations and footnotes omitted).

Finally, "[n]o matter how artfully or deliberately the [circuit] court judge draws the plan for these coming months, however, its success and indeed the chances" for S.H.'s "future happiness and emotional security will rely heavily on the efforts of" M.C., K.W. and C.W. *Honaker*, 182 W.Va. at 453, 388 S.E.2d at 326. "The work that lies ahead for both of them is not without inconvenience and sacrifice on both sides. Their energies . . . must be fully directed at developing compassion and understanding for one another, as well as showing love and sensitivity" to this little girl's feelings at a difficult time in all their lives. *Id.* at 453, 388 S.E.2d at 326–27.

LOUGHRY, Justice, concurring in part, dissenting in part:

I concur with the majority's conclusion that the circuit court correctly adjudicated S.H. as an abused child at the hands of her grandmother, the petitioner M.H. However, by reversing the termination of guardianship and reinstating the petitioner's post-adjudicatory improvement period, the majority has cavalierly disregarded the petitioner's abusive conduct and criminal conviction. This Court on appeal "may not overturn a finding simply because it would have decided the case differently[.]" Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W.Va. 223,

470 S.E.2d 177 (1996). Because the appendix record includes more than sufficient evidence to support all of the circuit court's rulings, and those rulings are clearly in the child's best interests, I dissent to the majority's discussion and resolution of the improvement period and termination issues.

S.H. has been the subject of abuse and neglect proceedings since 2011, when she was born addicted to drugs and had to spend the first two months of her life in a neonatal intensive care unit. In November of 2012, the biological parents agreed to voluntarily relinquish their custodial rights to S.H. As a result, the circuit court awarded legal guardianship of the child to the petitioner.[1] Unfortunately, the abuse and neglect of S.H. did not end. The petitioner allowed the child's mother, N.H., to live in their home and, although N.H. was serving a period of home incarceration, she continued to use drugs.[2] It was also discovered that the petitioner was in possession of, and using, illegal drugs in the home. When N.H.'s home incarceration officer made an unannounced visit to the home on August 21, 2014, four bags of marijuana totaling 1.7 pounds were found, unconcealed, on the floor of the petitioner's bedroom closet. The marijuana was in a location easily accessible to the child. Drug paraphernalia was also found in the home: a pipe and wrapping papers were under the petitioner's bed, and two syringes were in N.H.'s purse.

When interviewed later that day, the petitioner lied and denied ownership of the marijuana in her closet. However, she admitted that she had smoked marijuana in the prior two weeks, that she would test positive if tested for drugs, and that she used marijuana "every week or so" as a social activity. Because of the marijuana in her closet, the petitioner was charged with felonious possession with intent to deliver a controlled substance. Subsequently, she conceded that the

---

1. Although the appendix record does not contain all of the materials from the 2012 petition, it is presumed that the circuit court permitted the parents to retain their parental rights, while relinquishing their custodial rights, pursuant to the court's authority in West Virginia § 49-6-5(a)(5) (2012): "Upon a finding that the abusing parent . . . or parents are presently unwilling or unable to provide adequately for the child's needs, [the court may] commit the child temporarily to the custody of . . . a suitable person who may be appointed guardian by the court." The circuit court subsequently, in 2015, terminated all of the biological parents' rights.

2. Upon being taken into custody on August 21, 2014, N.H. tested positive for marijuana and Suboxone.

marijuana did, in fact, belong to her. On February 20, 2015, pursuant to a negotiated plea agreement, the petitioner pled guilty to misdemeanor possession of marijuana in a quantity greater than fifteen grams. Without mentioning her previously-disclosed social usage of illegal drugs, she told the court in her criminal case that she prepared and consumed baked goods containing marijuana in order to self-medicate pain. The court sentenced the petitioner to ninety days in jail, but then suspended the jail sentence and placed her on probation for two years. The petitioner has refused to reveal the source for her large stash of marijuana, even when questioned under oath after her criminal case was resolved.

The majority of the Court has concluded that the circuit court improperly revoked the petitioner's post-adjudicatory improvement period because she passed drug tests and performed tasks the DHHR asked of her. However, revocation is permissible even when there has been compliance with specific tasks:

> [I]t is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve ... [the] overall attitude and approach to parenting." Thus, a judgment regarding the success of an improvement period is within the [circuit] court's discretion regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans.

*In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991) (quoting *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Here, the circuit court revoked the petitioner's improvement period immediately upon her con-

viction for a drug crime.[3] Until then, the criminal charges were simply allegations and, due to the petitioner's initial dishonesty, there had been misinformation about the ownership of the marijuana.

Important to the circuit court's decision, but overlooked by the majority, is that the petitioner was the child's guardian, not the child's biological or adoptive parent. As such, she was afforded the statutory right to be heard in an adjudicatory hearing,[4] and she was among the class of persons who could be adjudicated as abusive of this child.[5] However, a court-appointed guardian does not have the same rights as a biological or adoptive parent has. *See In re D.B.J.*, 366 Mont. 320, 286 P.3d 1201, 1207 (2012) (concluding that removal of guardian is distinct from termination of parent-child relationship; guardian does not possess due process rights equivalent to those of parent). Moreover, even a parent " 'is not unconditionally entitled to an improvement period.' " *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (quoting *In re Charity H.*, 215 W.Va. 208, 216, 599 S.E.2d 631, 639 (2004)). In light of the finding of child abuse, and upon the petitioner's criminal conviction, the circuit court was completely within its discretion to revoke the petitioner's improvement period.

The majority of the Court is also wrong for not affirming the termination of the petitioner's guardianship. The petitioner's appointment as the child's legal guardian was the court-ordered disposition for the initial abuse and neglect petition. As such, the circuit court was free to modify that disposition upon finding "clear and convincing evidence [of] a material change of circumstances and that the modification is in the child's best interests[.]" W.Va. Code § 49-

---

**3.** The circuit court learned of the conviction during a status hearing that the court was statutorily-required to hold for the purpose of reviewing the ongoing improvement period. *See,* W.Va. Code § 49-6-12(b)(3) (2012).

**4.** "[T]he party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard[.]" W.Va. Code § 49-6-2(c) (2012), now codified in W.Va. Code § 49-4-601(h) (2015). *Accord In re A.H.*, Nos. 15-0828 & 15-0832, 2016 WL 1602944 (W.Va. Apr. 21, 2016) (memorandum decision) (concluding that relatives holding

legal guardianship of one child and custodianship of other child were entitled to abuse and neglect adjudicatory hearing).

**5.** "Abused child" is defined to include a child harmed or threatened by "a parent, guardian or custodian[,]" while "abusing parent" is "a parent, guardian or custodian ... whose conduct ... has been adjudged ... to constitute child abuse or neglect." W.Va. Code § 49-1-3(1), (2) (2012), now codified, with minor changes, in W.Va. Code § 49-1-201 (2015), in part.

4–606(a) (2015). The petitioner's conduct, adjudication as abusive, and criminal conviction most certainly constituted a material change of circumstances adverse to the child's best interests. Drug use triggered the abuse and neglect petition against the child's biological mother in 2011 and, obviously, the purpose of awarding legal guardianship to the petitioner was to remove S.H. from a drug-fueled environment. Unfortunately, we now know that the petitioner also used and possessed illegal drugs; maintained a substantial quantity of marijuana within easy reach of the child; used the marijuana in baked goods, which could be enticing to a child; permitted the child's drug-using mother to reside in the home with them; and was herself convicted of a drug crime. In light of these facts, any reasonable person would conclude that S.H.'s "health or welfare [was] ... threatened" by the petitioner's actions. *See* W.Va. Code § 49–1–201 (2015) (defining "abused child" to include the threat of harm, not just infliction of harm). Children should be protected from drugs, not placed in situations where they have easy access to illegal and dangerous substances that could be ingested. *See State v. Graham*, 137 N.M. 197, 109 P.3d 285 (2005) (affirming conviction for child abuse where defendant left marijuana in close proximity to young children, even though no evidence children touched drugs).

Although the petitioner may have complied with her improvement period until her criminal conviction, that is not determinative of the final disposition. Even when parental rights, not simply guardianship rights, are at issue, we have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014); *accord In re Frances J.A.S.*, 213 W.Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent [or guardian] has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child.").

The circuit court considered all of the evidence and ruled that termination of the guardianship was in S.H.'s best interests. S.H. will soon be five years old. As the circuit court noted, she

> has been in an unstable and unsafe home since birth. She is entitled to, and needs, stability. She needs to live without fear of being disrupted by repeated substance abuse episodes and also [without] having the intervention of child protective service workers in her home as many times as she [has] had in her short life.

The circuit court's knowledge of S.H., and of S.H.'s best interests, was garnered from years of presiding over the child's abuse and neglect matters. *See In re C.M.*, 235 W.Va. 16, 30, 770 S.E.2d 516, 530 (2015) (Loughry, J., dissenting) (expressing concern that majority ignored best interests of child; noting circuit court's well-supported decision was based on years of involvement in child's abuse and neglect matter). The circuit court used that knowledge to determine, correctly, that termination of the petitioner's guardianship was in S.H.'s best interests. Now that the parental rights of S.H.'s biological parents have been terminated, this case should proceed to a suitable adoption for S.H., not to another post-adjudicatory improvement period for an abusive legal guardian.

Finally, I am very troubled by the majority's dilatory handling of this appeal. All of the appellate briefs were filed by early November, 2015, and oral argument was held on January 12, 2016, the first argument docket of this Term of Court. At the conclusion of oral argument, the case was submitted for decision. Nonetheless, it took the majority five full months to issue its opinion. Such a delay can seem like a lifetime to a young child, particularly when the child has been removed from her home.[6] This delay is also

---

6. S.H. has been removed from the petitioner's home and placed with the interveners since the abuse and neglect petition was filed in September of 2014.

contrary to Rule 49 of the Rules of Procedure for Child Abuse and Neglect Proceedings: "The Supreme Court of Appeals shall give priority to appeals of child abuse and/or neglect proceedings ... and shall establish and administer an accelerated schedule in each case, to include the ... decision." This Court has repeatedly admonished circuit courts that abuse and neglect cases "shall take precedence over almost every other matter" and "must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991); *e.g., Tiffany Marie S.*, 196 W.Va. at 230, 470 S.E.2d at 184; *State ex rel. Tristen K. v. Janes*, 227 W.Va. 62, 64–65, 705 S.E.2d 569, 571–72 (2010). Unfortunately, the majority failed to follow its own cautionary tale when handling the instant appeal.

While the majority correctly affirmed the circuit court's adjudication of the petitioner as abusive, it ignored the circuit court's other well-supporting findings of fact and conclusions of law. Moreover, by remanding for another post-adjudicatory improvement period, and because of the lazy time frame used to decide this appeal, the majority has delayed S.H.'s opportunity to receive the stability and permanency she deserves. Accordingly, I concur, in part, and dissent, in part.